UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>KARL VUONG, et al.,<br><br>    Defendants. | No. 2:14-cv-00709-KJM-DB<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Pending before the court is plaintiff Scott Johnson's motion for default judgment against defendant Karl Vuong. (ECF No. 79.) This motion came on for hearing on November 17, 2017, at 10:00 am. (ECF No. 80.) Attorney Isabel Masanque appeared telephonically on behalf of plaintiff. No appearance was made by, or on behalf of defendant. At that time oral argument was heard and the motion was taken under submission.

For the reasons set forth below, the undersigned will recommend that plaintiff be granted default judgment.

## BACKGROUND

Plaintiff Scott Johnson, proceeding through counsel, initiated this action on March 18, 2014, by filing a complaint and paying the required filing fee. (ECF No. 1.) On August 26, 2016, plaintiff filed a stipulation signed by defendant Karl Vuong for plaintiff to file an amended

1

complaint. (ECF No. 45.) Plaintiff filed an amended complaint on November 3, 2016. (ECF No. 48.) The amended complaint named as defendants Karl Vuong, Bonnie Chow, Karen Kwai Suen Chow, and Warren Chow Jr., ("Chow defendants"). (Id. at 1.) Plaintiff, a level C-5 quadriplegic who cannot walk, has significant manual dexterity impairments, and uses a wheelchair, alleges that on four occasions in November and December of 2013, he ate at the Mariscos Mazatlan and encountered architectural barriers. (Id. at 1 & 3.) Plaintiff further alleges that defendants violated the Americans with Disabilities Act and the Unruh Civil Rights Act. (Id. at 2.)

On May 16, 2017, the assigned District Judge issued an order granting plaintiff's motion to dismiss and dismissing the Chow defendants from this action with prejudice. (ECF No. 70.) Pro se defendant Karl Vuong is the only defendant remaining in this case. (ECF No. 72 at 1.) On August 11, 2017, the assigned District Judge issued an order to show cause to plaintiff due to plaintiff's failure to seek "clerk's entry of default against" defendant Vuong and move for default judgment. Defendant Vuong had been "non-responsive for over a year." (ECF No. 71.) On August 17, 2017, plaintiff filed a motion seeking default judgment against the defendant. (ECF No. 73.)

On September 21, 2017, the undersigned issued an order denying plaintiff's motion without prejudice to renewal because plaintiff failed to first seek entry of default with respect to defendant. (ECF No. 75.) On September 27, 2017, plaintiff sought the entry of default as to defendant and default was entered on September 28, 2017. (ECF No. 76 & 77.) On October 3, 2017, plaintiff filed a motion for default judgment. (ECF No. 79.) Defendant was served with a copy of the motion for default judgment. (ECF No. 79-14.) Defendant did not file an opposition to the motion for default judgment.

Plaintiff's motion for default judgment seeks injunctive relief for providing an accessible parking space, accessible door hardware, and an accessible transaction counter at the property; statutory damages in the amount of $12,000; and attorney's fees and costs in the amount of $4,985. (ECF No. 79-2.)

////

////

LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

ANALYSIS

**A. Appropriateness of the Entry of Default Judgment under the Eitel Factors**

**1. Factor One: Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered. PepsiCo, Inc. v. California Security Cans, 238 F.Supp.2d 1172, 1177

(C.D. Cal. 2002). In the instant action, defendant Karl Vuong has been properly served with the first amended complaint, but has been non-responsive in defending this action. If plaintiff's motion for default judgment is not granted, plaintiff will likely be without other recourse for recovery. Id. Here, plaintiff would face potential prejudice if the court did not grant default judgment.

**2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The second and third Eitel factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. Eitel, 782 F.2d at 1471-72. The court considers the two factors together given the close relationship between the two inquiries. The Ninth Circuit has suggested that these two factors require that a plaintiff state a claim on which the plaintiff may recover. PepsiCo, Inc., 238 F.Supp.2d at 1175; see Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.1978). Here, plaintiff seeks default judgment on the following claims: (1) discrimination in violation of Title III of the American with Disabilities Act; (2) discrimination in violation of the Unruh Civil Rights Act. (ECF No. 79-1.)

**(1) Title III of the ADA**

**(a) Applicable Legal Standards**

Under Title III of the ADA, no individual shall be discriminated "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." Roberts v. Royal Atlantic Corp., 542 F.3d 363, 368 (2th Cir. 2008); U.S.C. § 12182(a). For an ADA plaintiff to establish Article III standing to pursue injunctive relief, he must demonstrate a "real and immediate threat of repeated injury" in the future. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011). With respect to likelihood of future repeated injury, plaintiff can establish that "he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier." Id. at 950. Alternatively, he can show that the "discriminatory architectural barriers deter him from returning to a noncompliant accommodation," but that he would return if the barriers were removed. Id.

To prevail on his Title III ADA claim, plaintiff must establish that (1) he is disabled within the meaning of the ADA; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) that defendant discriminated against the plaintiff within the meaning of the ADA. Id.

Generally, the concept of "discrimination" under the ADA not only includes obviously exclusionary conduct — such as a sign stating that persons with disabilities are unwelcome, but also extends to more subtle forms of discrimination — such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation. Chapman, 631 F.3d at 945; PGA Tour, Inc. v. Martin, 532 U.S. 661, 674-75 (2001). With respect to existing facilities, discrimination includes "a failure to remove architectural barriers … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A). To determine if a barrier exists, the ADAAG[1] establishes the technical standards. If a barrier violates these standards relating to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes "discrimination" under the ADA. Chapman, 631 F.3d at 947; Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1034 (9th Cir. 2008). Removal is readily achievable where it is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 1218(9).

**(b) Analysis**

Here, plaintiff established standing under the intent-to-return theory. In his first amended complaint, plaintiff alleges that "he lives about two minutes from the Mariscos Mazatlan facilities and is in the area on a consistent and ongoing basis." (ECF No. 48 at 3.) Plaintiff also alleges that he has eaten at the Mariscos Mazatlan numerous times in the last three months (November and December of 2013), and has been deterred from eating on other occasions because of the barriers there. (Id.) Given the location and nature of the facility, plaintiff further alleges that he

---

[1] The ADA Accessibility Guidelines (ADAAG) are promulgated by the Attorney General to "carry out the provisions" of the ADA, 42 U.S.C. § 12186(b). These guidelines "lay out the technical structural requirements of places of public accommodation." Fortyune v. Am. Multi–Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004).

will continue to patronize, and therefore will continue to be discriminated against due to the lack of accessible facilities. (Id. at 5.) Thus, there is standing because plaintiff has suffered an injury-in-fact, and he has demonstrated a likelihood of future injury sufficient to support injunctive relief. Chapman, 631 F.3d at 947.

As to the merits of the ADA claim, there is little dispute that the first two requirements have been met. Plaintiff alleges in the amended complaint that "he is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van." (ECF No. 48 at 1.) There can be little doubt that he is "disabled" within the meaning of the ADA. See 42 U.S.C. § 12102 (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual."). In addition, plaintiff alleges that "Mariscos Mazatlan is a business establishment and place of public accommodation" and "defendants are, or were at the time of the incidents, the real property owners, business operators, lessors and/or lessees for Mariscos." (ECF No. 48 at 1 & 3.) Mariscos Mazatlan is a restaurant which is expressly identified as a place of public accommodation and subject to Title III of the ADA. See 42 U.S.C. § 12181 (7)(B).

With respect to the third element, whether defendant discriminated against plaintiff, the factual allegations of the first amended complaint establish the following. First, plaintiff alleges that there is no handicap parking space. (ECF No. 48 at 3.) The ADAAG requires a specified number of the parking spaces to be accessible. 2010 Standards § 208.1. Here the failure to provide accessible parking space is a barrier, thus constituting discrimination. Second, plaintiff pleads that "the door hardware at the entrance is a very small loop handle that requires tight grasping to operate." The alleged door hardware violates the ADAAG standard and constitutes discrimination. 2010 Standards § 309.4. (The ADAAG provides that "operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist"). Third, plaintiff alleges that there is no lowered, 36 inch portion of transaction counter for use by persons in wheelchairs. (ECF No. 48 at 3.) The inaccessible transaction counter is an architectural barrier that violates the ADAAG standards on counters. 2010 Standards § 904.3.2. (Pursuant to the ADAAG, the counter surface height shall be 38 inches (965 mm) maximum

above the finish floor or ground).

Finally, plaintiff further alleges that defendant "exercised control and dominion over the conditions at this location and had the means and ability to make the change." (ECF No. 48 at 3.) Therefore, removal of these barriers is "readily achievable" by defendant, and defendant's failure to do so constitutes "discrimination" under the ADA. 42 U.S.C. § 12182(b)(2)(A).

Accordingly, the elements of the ADA claim are satisfied, and plaintiff has met his burden to state a prima facie Title III discrimination claim. The second and third Eitel factors favor the entry of default judgment. See Lozano v. C.A. Martinez Family Ltd. Partnership, 129 F.Supp.3d 967, 972-73 (S.D. Cal. 2015); Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1009-10 (C.D. Cal. 2014).

**(2) California's Unruh Civil Rights Act**

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). As expressly provided by statute, a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51 (f); see also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664-65 (Cal. 2009). Here, because plaintiff's complaint properly alleges a prima facie claim under the ADA, plaintiff has also properly alleged facts supporting a claim under the Unruh Civil Rights Act.

**3. Factor Four: The sum of Money at Stake in the Action**

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Eitel, 782 F.2d at 1471-72; see also Philip Morris USA, Inc v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, plaintiff seeks injunctive relief; statutory damages under the Unruh Civil Rights Act corresponding to three visits to the Mariscos Mazatlan ($4,000 minimum statutory damages per visit, for a total amount of $12,000); and attorney's fees and costs in the amount of $4,985. (ECF No. 79 at 2.) Although the undersigned more closely scrutinizes the requested statutory damages,

7

attorney's fees, and costs below, the undersigned does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default judgment.

### 4. Factor Five: The Possibility of a Dispute Concerning Material Facts

This Eitel factor "considers the possibility of dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, there appears to be no material facts in dispute. This factor weighs in favor of a default judgment.

### 5. Factor Six: Whether the Default Was Due to Excusable Neglect

In this case, there is no indication in the record that defendant's default was due to excusable neglect. Despite having been properly served with plaintiff's amended complaint, the requests for entry of default, and the instant motion for default judgment, defendant Karl Vuong has been non-responsive in this action for over a year. (ECF Nos. 48-1, 71, 76-2, and 79-1.) Thus, the record suggests that defendant Karl Vuong has chosen not to defend this action, and that the default did not result from excusable neglect. Accordingly, this Eitel factor favors the entry of default judgment.

### 6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

The final Eitel factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment. Eitel, 782 F.2d at 1472. Generally, default judgments are disfavored, and a case should be decided on the merits whenever possible. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is warranted. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010). As defendant Karl Vuong has failed to respond in this matter, a decision on the merits is impossible. Therefore, the seventh Eitel factor does not preclude the entry of default judgment.

////

////

### 7. Summary of Eitel Factors

In sum, upon consideration of all the Eitel factors, the undersigned concludes that plaintiff is entitled to a default judgment against defendant and recommends that such a default judgment be entered. The undersigned therefore turns to plaintiff's requested damages and injunctive relief.

**B. Terms of the Judgment to Be Entered**

### 1. Injunctive Relief

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Landstar Ranger, Inc. v. Path Enterprises, Inc., 725 F.Supp.2d 916, 920 (C.D. Cal. 2010). Plaintiff's motion for default judgment seeks injunctive relief compelling the defendant to provide an accessible parking space, accessible door hardware, and accessible transaction counter at the Mariscos Mazatlan. (ECF No. 79 at 2.)

Having found that plaintiff has established that defendant violated the ADA, the undersigned recommends that plaintiff's request for injunctive relief be granted, and defendant be ordered to remove barriers at the Mariscos Mazatlan identified in plaintiff's first amended complaint, to the extent he has the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities. See Vogel, 992 F.Supp.2d at 1015.

### 2. Statutory Damages

The Unruh Act provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which he was denied equal access. Cal. Civ. Code § 52(a). To recover statutory damages, a plaintiff need only show that he was denied full and equal access, not that he was wholly excluded from enjoying defendant's services. Vogel, 992 F.Supp.2d at 1015; Hubbard v. Twin Oaks Health and Rehabilitation Center, 408 F.Supp.2d 923, 932 (E.D. Cal. 2004). In support of the request for $12,000 in statutory damages, plaintiff has submitted a declaration stating that plaintiff went to the Mariscos Mazatlan on four occasions and he was deterred from visiting on several other occasions as well.[2] (ECF No. 79-5 at 2.) Accordingly, the undersigned recommends that plaintiff be awarded $12,000 in statutory damages.

---

[2] Even though the first amended complaint and plaintiff's declaration allege four visits, plaintiff's motion for default judgment seeks damages for only three visits. (ECF No. 79-1, at 10.)

### 3. Attorney's Fees and Costs

Plaintiff's motion for default judgment seeks an award of $4,985 in attorney's fees and costs.[3] (ECF No. 79 at 2.) Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs in the court's discretion. Here, plaintiff requests $480 in filing fees and service costs, which are reasonable and should be awarded. (ECF No. 79-4 at 2.)

Plaintiff also requests $4,505.00 in attorney fees for 10.6 hours of work. To determine reasonable attorney's fees, the starting point is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1933). This is called the "loadstar" method. The fee applicant must submit evidence of the hours worked and the rates claimed. Id.

#### (1) Reasonable Hourly Rates

In assessing application for attorney's fees, the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011). It is also the general rule that the "relevant legal community" is the forum in which the district court sits. See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Here, plaintiff requests attorney fees at an hourly rate of $425. (ECF No. 79-4 at 3.) Plaintiff's counsel Mr. Potter states that he is the founding member of his law firm and that he has 23 years of experience handling disability related issues. (ECF No. 79-4 at 2.) Mr. Potter further claims that it is a fair rate for attorneys with similar experience and expertise in this nuanced area of law. (ECF No. 79-4 at 3.) In support of this request, plaintiff cites to the rates awarded in the Southern and Central Districts of California. (ECF No. 79-9 through 13.) However, plaintiff does not address the prevailing market rates in the forum district.

---

[3] In plaintiff's motion for default judgment, there is an erroneous argument concerning attorney's fees and "Local Rule 55." (ECF No. 79-1 at 13.) This court does not have a Local Rule 55.

10

In this regard, the overwhelming, if not unanimous, weight of authority establishes that the current prevailing rate for attorney's fees for similar services by lawyers of reasonably comparable skill, experience, and quality is $250 - $300 per hour in the Sacramento division of the Eastern District of California. See Johnson v. Patel, No. 2:15-cv-02298-MCE-EFB, 2017 WL 999462, at *3 (E.D. Cal. Mar. 15, 2017) (citing numerous Eastern District ADA cases where $250-$300 was determined to be a reasonable rate on default judgment); Johnson v. Wayside Property, Inc., No. 2:13-cv-1610 WBS AC, 2014 WL 6634324 at *6-8 (E.D. Cal. Aug. 29, 2014) (same).

In addition, in April of this year, a court in this district found that $300 per hour is the reasonable rate for Mr. Potter in a disability case. Johnson v. Akins, No. 2:16-cv-02067 MCE KJN, 2018 WL 1763228 * 2 (E.D. Cal. Apr. 12, 2018). That case further cited another decision within this district, made just three months previously, to Mr. Potter in the amount of $300. Id., discussing Johnson v. Saleh, No. 2:16-cv-00617 JAM KJN, 2018 WL 1157494, at *3 (E.D. Cal. Mar. 5, 2018). Similarly, in August of last year, this court awarded $300 per hour to Mr. Potter. Johnson v. Swanson, No. 2:15-cv-00215 TLN DB, 2017 WL 3438735, at *4 (E.D. Cal. Aug. 10, 2017).

A review of the relevant legal authority finds that a rate of $425 per hour for Mr. Potter is excessive, even in light of counsel's extensive qualifications. The undersigned will recommend that a reasonable hourly rate for the work performed by plaintiff's counsel is $300 per hour.

**(2) Hours Reasonably Expended**

A prevailing party is entitled to compensation for attorney time "reasonably expended on the litigation." Webb v. Board of Educ. of Dyer County, 471 U.S. 234, 242 (1985). The attorney's fee applicant bears the burden of establishing the appropriate number of hours expended. Hensley, 461 U.S. at 437; see also Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1100 (E.D. Cal. 2011) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.").

Time is reasonably expended on the litigation when it is "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Delaware

Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotations omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting Sorenson v. Mink, 239 F.3d 1140, 1147 (9th Cir. 2001)).

Here, plaintiff's motion for default judgment seeks compensation for 10.6 hours expended on this action. (ECF No. 79-4, at 2.) That amount of time is reasonable in similar ADA cases coming before the court on motions for default judgment. See, e.g., Johnson v. Patel, 2017 WL 999462, at *3 (finding "the 8.8 hours expended in filing of motion for the ADA default judgment is admittedly modest"); Johnson v. Akins, 2018 WL 1763228 * 3 (awarding 12.7 hours expended in the ADA action); Loskot v. D & K Spirits, LLC, No. 2:10-cv-0684 WBS DAD, 2011 WL 567364, at *4 (E.D. Cal. Feb. 15, 2011) (awarding 17.3 hours expended through filing of motion for default judgment).

**(3) Summary**

As noted above, plaintiff should be awarded $300 per hour for the time expended by plaintiff's counsel in this matter. Given the 10.6 hours in time expended, that yields a total fee award of $3,180. When added to the $480.00 in filing fees and service costs, the total amount of attorney's fees and costs to which plaintiff is entitled is $3,660.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's October 3, 2017 motion for default judgment (ECF No. 79) be granted;

2. Judgment be entered against defendant Karl Vuong;

3. Defendant Karl Vuong be ordered to pay $12,000 in statutory damages;

4. Defendant be ordered to correct the violations at the Mariscos Mazatlan identified in plaintiff's first amended complaint, to the extent that defendant has the legal right to do so, so that the facility is readily accessible to and usable by individuals with disabilities;

5. Defendant be ordered to pay plaintiff $3,660 in attorneys' fees and costs; and

6. This case be closed.

////

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 11, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB: E(rx)
DB\orders\orders.pro se\johnson0709.mdj.f&rs